IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


KARL ANDREW BROWN,

     Plaintiff,

vs.                                             Case No. 4:13cv462-RH/CAS

FLORIDA DEPT. OF HEALTH,

     Defendant.

_____/


## REPORT AND RECOMMENDATION

Four dispositive motions are pending in this case.  The Department of Health filed a motion to dismiss pro se Plaintiff Karl Brown's tort claims for negligence, malfeasance, and perjury.  Doc. 58.  Mr. Brown was directed to file a response in opposition to that motion, doc. 59,[1] and his response was filed on October 31, 2014. Doc. 72.  That motion is ready for a ruling and is addressed herein.

Additionally, the Department filed a motion for partial summary judgment, doc. 69.  The Department argues that Mr. Brown's employment discrimination claims should be dismissed because he did not first pursue arbitration as required by the Independent

_____

[1] Mr. Brown sought to file one response, docs. 66-67, but it was not permitted because it did not comply with N.D. Fla. Loc. R. 7.1(A).  Doc. 68.  Plaintiff was directed to file an amended response.  *Id.*

Contractor Agreement, *id.* at 2-5, he is not an employee for purposes of Title VII because of his status as an independent contractor, *id.* at 5-10, he cannot show a *prima facia* case of discrimination, *Id.* at 10-14, and there were legitimate, nondiscriminatory reasons for removing him as project manager.  *Id.* at 14-16.[2]  Mr. Brown was advised of his obligation to response to that motion pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1.  Doc. 74.  His response in opposition was filed on December 1, 2014.  Doc. 80.

Mr. Brown attempted to file his own motion for summary judgment in November 2014.  Doc. 73.  That motion was submitted after the deadline, was not supported by a statement of material facts, and did not reference any specific evidence with sufficient detail to permit the Court to locate and check the source.  As a courtesy, Mr. Brown was given additional time in which to file an amended motion.  Doc. 74.

He filed an amended summary judgment motion, doc. 86, on December 10, 2014, which also was not in compliance with the rules of this Court.  Another Order was entered advising him of his obligation to comply with Rule 56 and Local Rule 56.1, explaining the deficiencies which had to be corrected, and giving Mr. Brown one final opportunity to submit a second amended motion for summary judgment.  Doc. 89.  That Order advised Mr. Brown that because a second Order had been issued to advise him to correct the same deficiencies, "no further opportunities [would] be extended" to correct those deficiencies.  *Id.*  Thereafter, Mr. Brown filed a second amended motion for summary judgment, doc. 92, with a statement of supporting facts, doc. 93, on

---

[2] The Department's statement of undisputed material facts in support of the summary judgment motion was filed as an attachment.  Doc. 69-1.

January 9, 2015.  The Department filed its response in opposition to that motion, doc. 98, and an opposing statement of facts, doc. 97, on January 26, 2015.  Both of the motions for summary judgment are ready for a ruling and are considered within this Report and Recommendation.

Finally, Mr. Brown filed a motion for judgment on the pleadings on April 16, 2015. Doc. 105.  No grounds are submitted to demonstrate that judgment on the pleadings is appropriate under Rule 12(c).[3]  The Department has argued in response that the pleadings are not closed because an answer has not been filed to the amended complaint.[4]  Doc. 110.

Mr. Brown's motion essentially seeks judgment in his favor based on the Rule 56 material evidence he submitted.  Doc. 105.  Indeed, Mr. Brown also filed a document entitled "Memoranda and Evidence to support the Amended Motion for Summary Judgment," doc. 106, on April 17, 2015.  These documents reveal the basis for the motion for judgment on the pleadings is Mr. Brown's contention that his summary judgment is meritorious.  Thus, because the motion for judgment on the pleadings, doc. 105, is duplicative of the summary judgment motion, it should be denied.

**Allegations of the Amended Complaint, doc. 48**

Mr. Brown alleged that he was employed by the Florida Department of Health from August 13, 2011, until March 29, 2012.  Doc. 48 at 3.  He contends he was discriminated against on the basis of his gender and race.  *Id.*  Mr. Brown asserted that

---

[3] "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c).

[4] Responses to the tort claims have not been filed pending a ruling on the motion to dismiss those claims.  *See* doc. 110 at 2.

he was treated "unequally compared to white female employees of the same position."
*Id.* at 4.

Mr. Brown also included the following allegations in his amended complaint:
"Plaintiff amends original complaint to include allegations of Torts-Negligence-
Malfeasance, by the Florida Department of Health."  Doc. 48 at 5.  "These actions were
committed by Defendant, during Plaintiffs employment from August 2011-March 2012."
*Id.*  "Plaintiff amends original complaint to include allegations of Perjury, committed by
the Florida Department of Health when testifying, under oath during investigations by
the Florida Commission on Human Relations on or about 26 October 2012."  *Id.*

Mr. Brown asserted that he filed charges with the E.E.O.C. prior to case initiation.
Doc. 48 at 3.  He attached a copy of the Dismissal and Notice of Rights received from
the E.E.O.C. which was dated May 13, 2013.  *Id.* at 7.

**Standard of Review - Motion to Dismiss**

The issue on whether a complaint should be dismissed pursuant to FED. R. CIV.
P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the
complaint alleges enough plausible facts to support the claim stated.  Bell Atlantic Corp.
v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the
standard from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  "To
survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted
as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129
S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127

S.Ct. 1955).[5]  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 at 556); *see also*

Speaker v. U.S. Dept. of Health, 623 F.3d 1371, 1380 (11th Cir. 2010). "The plausibility

standard" is not the same as a "probability requirement," and "asks for more than a

sheer possibility that a defendant has acted unlawfully."  Iqbal, 129 S.Ct. at 1949

(quoting Twombly, 550 at 556).  A complaint that "pleads facts that are 'merely

consistent with' a defendant's liability," falls "short of the line between possibility and

plausibility."  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 at 557).

The pleading standard is not heightened, but flexible, in line with Rule 8's

command to simply give fair notice to the defendant of the plaintiff's claim and the

grounds upon which it rests.  Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992,

998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil

actions, with limited exceptions.").  Pro se complaints are held to less stringent

standards than those drafted by an attorney.  Wright v. Newsome, 795 F.2d 964, 967

(11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30

L.Ed.2d 652 (1972)).  Nevertheless, a complaint must provide sufficient notice of the

claim and the grounds upon which it rests so that a "largely groundless claim" does not

proceed through discovery and "take up the time of a number of other people . . . ."

Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577

---

[5] The complaint's allegations must be accepted as true when ruling on a motion
to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert.
denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's
disbelief of a complaint's factual allegations."  Twombly, 127 S.Ct. at 1965 (quoting
Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)).

(2005) (quoted in Twombly, 127 S.Ct. at 1966).  The requirements of Rule 8 do "not

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1949.  A complaint does not need detailed

factual allegations to survive a motion to dismiss, but Rule 8 "demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation."  556 U.S. at 678, 129

S.Ct. at 1949.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation

of the elements of a cause of action will not do.' "  *Id.* (quoting Twombly,  550 U.S., at

555, 127 S.Ct. 1955).

**Analysis**

The Department of Health's motion to dismiss seeks to dismiss the state law tort

claims.  Doc. 58.  The allegations within the complaint were conclusory only.

Mr. Brown's complaint asserted only that he was including "allegations of Torts-

Negligence-Malfeasance" and stated the actions were committed during his

employment with the Defendant "from August 2011-March 2012."  Doc. 48 at 5.  There

are, however, no supporting factual allegations to support a tort claim for negligence.

The claims are bare, unsupported conclusion and are insufficient to state a claim.

Even if Mr. Brown had provided supporting factual allegations, the claims could

still not go forward in this case because Mr. Brown did not comply with FLA. STAT.

§ 768.28.  To proceed with a tort claim under § 768.28, Mr. Brown must have complied

with the pre-suit requirements.  The relevant statute provides:

> An action may not be instituted on a claim against the state or one of its
> agencies or subdivisions unless the claimant presents the claim in writing
> to the appropriate agency, and also, except as to any claim against a
> municipality or the Florida Space Authority, presents such claim in writing
> to the Department of Financial Services, within 3 years after such claim

accrues and the Department of Financial Services or the appropriate
agency denies the claim in writing . . . .

FLA. STAT. § 768.28(6)(a).  "Notice to the agency and written denial of the claim are

'conditions precedent to maintaining an action' against a state agency or subdivision."

Smith v. Rainey, 747 F. Supp. 2d 1327, 1337 (M.D. Fla. 2010) (quoting Fla. Stat.

§ 768.28(6)(b)).  "Florida courts strictly construe this notice requirement and a plaintiff

must allege in the complaint that he complied with the notice provisions of Section

768.28(6)."  Smith, 747 F. Supp. 2d at 1337 (citing Levine v. Dade Cnty. Sch. Bd., 442

So.2d 210, 212-13 (Fla. 1983); see also Rumler v. Dep't of Corr., 546 F.Supp.2d 1334,

1344 (M.D. Fla. 2008); Brown v. City of Miami Beach, 684 F.Supp. 1081, 1084 (S.D.

Fla. 1988).  Mr. Brown did not allege within the complaint that he met this condition

precedent.  Therefore, the state law tort claims should be dismissed without prejudice.[6]

---

[6] "A complaint that is brought without first providing statutory notice must be
dismissed with leave for plaintiff to amend his complaint to allege compliance with the
notice requirement."  Fletcher v. City of Miami, 567 F. Supp. 2d 1389, 1393 (S.D. Fla.
2008).  If it is clear that time has expired to fulfill the requirement, the complaint should
be dismissed "with prejudice."  Fletcher, 567 F. Supp. 2d at 1393.  Here, Mr. Brown has
submitted a belated exhibit indicating he gave notice to the Department of Financial
Services on October 9, 2014.  Doc. 79.  It is unknown whether Mr. Brown received
written denial of that claim.  Nevertheless, "the failure of the Department of Financial
Services or the appropriate agency to make a final disposition of the claim in writing
within six months of its filing is deemed a final denial of the claim."  Rumler, 546
F.Supp.2d at 1344. (citing § 768.28(6)(d)).  Thus, Mr. Brown filed these claims
prematurely, because "section 768.28(6)(d) essentially requires a claimant to wait six
months from the date of notice prior to commencing a tort action against a Florida state
entity."  Rumler, 546 F.Supp.2d at 1344.  Moreover, it does not appear that Mr. Brown's
"notice" was also submitted to the Department of Health.  See doc. 72.  Furthermore,
the notice, doc. 79, did not fully comply with § 768.28 because it did not provide an
amount of judgment owed.  Because the time has not yet expired to fulfill the statutory
notice requirement, the amended complaint should be dismissed without prejudice.

Additionally, Mr. Brown's asserted claims for "malfeasance" and "perjury" are not viable.  There is no cognizable civil tort claim for perjury[7] in Florida.  That is a non-existent claim and should be dismissed.  The claim for malfeasance is not a claim that may properly be brought against the state.  The State of Florida has waived its sovereign immunity "only to the extent specified in" § 768.28(1).  Immunity is waived only to allow recovery of damages "for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of the employee's office or employment . . . ."  FLA. STAT. § 768.28(1).  A "sovereign cannot be sued without its own permission . . . and is based on the principle that 'the King can do no wrong.'"  American Home Assur. Co. v. Nat'l R.R. Passenger Corp., 908 So. 2d 459, 471 (Fla. 2005) (answering certified questions from the Eleventh Circuit regarding sovereign immunity).  Although there is a tort claim for "negligence, malfeasance, or misfeasance" which may be brought by a consumer against a contractor, *see* FLA. STAT. § 768.0425, a malfeasance claim, separate and apart from a negligence claim, may not be brought against the State.  The motion to dismiss should be granted as to all tort claims.

**Standard of Review - Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a

---

[7] Perjury is a criminal violation.  *See* FLA. STAT. § 837.05.  As a civil litigant, Mr. Brown cannot prosecute a claim for perjury.

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must then show[8] the court "that there is an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S. Ct. at 2554.

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). A party must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., LTD. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting

---

[8] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), cert. denied 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202

(1986)).  All reasonable inferences must be resolved in the light most favorable to the

nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if

there is a genuine dispute as to those facts.  Scott v. Harris, 550 U.S. 372, 380, 127

S.Ct. 1769, 167 L.Ed.2d 686 (2007) (cited in Ricci v. DeStefano, 129 S.Ct. 2658, 2677

(2009)).  "Where the record taken as a whole could not lead a rational trier of fact to find

for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus.

Co., 475 U.S. at 587 (internal quotation marks omitted) (quoted in Ricci v. DeStefano,

129 S.Ct. at 2677).

　　"Cross motions for summary judgment do not change the standard." Latin Am.

Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 499

F.3d 32, 38 (1st Cir. 2007) (quoted in Ernie Haire Ford, Inc. v. Universal Underwriters

Ins. Co., 541 F. Supp. 2d 1295, 1297 (M.D. Fla. 2008).  " 'Cross motions for summary

judgment are to be treated separately; the denial of one does not require the grant of

another.' " Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d

1025, 1030 (10th Cir. 2007) (quoting Buell Cabinet Co. v. Sudduth, 608 F.2d 431, 433

(10th Cir. 1979)) (quoted in Ernie Haire Ford, Inc., 541 F. Supp. 2d at 1297-98).

　　Because Mr. Brown (as the party with the burden of proof) has a heavier burden

on summary judgment, the Court will consider the Department's motion first.  If that

motion is denied, the Court will consider whether Mr. Brown is entitled to judgment as a

matter of law.  In addition, because the Department has argued that Mr. Brown was not

an employee, but an independent contractor, the evidence concerning that defense will

be evaluated first.  Only if that aspect of the Department's summary judgment motion is

denied is it necessary to evaluate the discrimination claims on the merits.

**Rule 56 evidence**

In 2011, Lola Pouncey, Chief of the Bureau of Operations within the Florida

Department of Health's Division of Medical Quality Assurance [MQA], created "a

business plan for [a] Enforcement Case Management System [ECMS]."  Doc. 69-6 at 2

(Pouncey affidavit).  "ECMS would modernize the Department's regulatory case

enforcement process by creating an electronic case management system."  *Id.*  "The

goal of ECMS was to create a single system that would store case documents, perform

timekeeping and case management functions, and create documents related to the

enforcement process."  *Id.*[9]  Ms. Pouncey "received approval from management in April

2011 to recruit a project manager to support the ECMS and the Governance Committee

in August 2011 to proceed with the project."  *Id.*

Development of ECMS would require "information technology knowledge and

project management skills that" Division employees either lacked, or could not utilize

"due to other duties."  *Id.* at 2-3.  Ms. Pouncey explained in her affidavit that MQA had

previously "utilized project management consultants to provide expertise in the

development of technical aspects of information technology projects."  *Id.* at 3.  "Those

consultants are not employees of the Department of Health,[10] but are instead contracted

───────────────

[9] "ECMS is part of the Department of Health's initiative to move from paper based
processes to electronic ones."  Doc. 69-5 at 2 (Tyre affidavit).

[10] Ms. Tyre also asserts in her affidavit that such "consultants are not employees
of the Department of Health but are instead retained to provide MQA with technical
expertise . . . ."  Doc. 69-5 at 1 (Tyre affidavit).  "The nature of the work is focused and
limited in duration."  *Id.* at 2.

for through authorized venders on an as needed basis." *Id.* Ms. Pouncey directed

Operations Management Consultant Manager Candy Tyre "to seek a project

management consultant to focus on developing the system requirements for ECMS."

*Id.*

Ms. Tyre, Operations Management Consultant Manager within MQA's Bureau

of Enforcement, submitted an affidavit in which she explained that "MQA already had

five other consultants under contract at that time . . . ."  Doc. 69-5 at 2 (Tyre affidavit).

"[G]iven the importance of the project to [the Department], MQA desired to have a

single consultant dedicated to development of ECMS."  *Id.*  Ms. Tyre adhered to the

"procurement process established" in State Contract ID No. 973-561-6-1 which "lists

vendors eligible to provide information technology consulting services to agencies of the

State of Florida . . . ."  *Id.* at 3; *see also* doc. 69-5 at 16-29, 36-46 (Tab A to Tyre

affidavit).  The Contract also "sets forth the terms and conditions under which any

contractor will work."  *Id.*; *see also* doc. 69-5 at 46-110 (Tab A to Tyre affidavit).  Under

that process, "MQA contracts directly with authorized vendors to provide project

management consulting on our information technology projects."  Doc. 69-5 at 3.  "The

vendor, in turn, provides a consultant who works on a project."  *Id.*  Under § 4.34 of the

State Contract, the vendor is duty bound to ensure that no employment relationship

exists between the consultant and the Department of Health."  *Id.*; *see also* doc. 69-5 at

88 (Tab A to Tyre affidavit).  The section of the Contract referenced by Ms. Tyre

provides:

> The Customer and the State shall take all actions necessary to ensure
> that Contractor's employees, subcontractors and other agents are not
> employees of the State of Florida.  Such actions include, but are not
> limited to, ensuring that Contractor's employees, subcontractors, and other

agents receive benefits and necessary insurance (health, workers'
compensations, and unemployment) from an employer other than the
State of Florida.

Doc. 69-5 at 89 (§ 4.34 of the Contract, Tab A to Tyre affidavit).  Ms. Tyre states that in

her "experience, vendors typically enter into independent contractor agreements with

project managers to provide the services the vendor has agreed to provide to MQA."

Doc. 69-5 at 3 (Tyre affidavit).

Ms. Tyre "sent a Statement of Work ('SOW') to all authorized vendors to begin

the process of securing a consultant for the ECMS project."  *Id.*  The SOW provided the

professional qualifications needed for the project manager position and outlined the

tasks and deliverables expected to be performed.  Doc. 69-5 at 3-4 (Tyre affidavit); *see*

*also* Tab B to Tyre affidavit (doc. 69-5 at 111- 117).  Vitaver and Associates (hereinafter

Vitaver) "an authorized vendor under the State Contract, responded to [the] SOW and

provided" Mr. Brown "as a candidate."  Doc. 69-5 at 4 (Tyre affidavit).  Mr. Brown "met

the minimum qualifications for the project: he held a bachelor's degree in Computer

Science, had roughly twenty years working in information technology field, and had

recently taken the certification examination to be certified as a project manager by the

Project Management Institute."  *Id.*  Mr. Brown was interviewed along with other

candidates, and the MQA panel's "collective opinion was that he was the best qualified."

*Id.*  Ms. Tyre informed Vitaver that MQA considered Mr. Brown "a good fit for" the

ECMS project and advised that Vitaver's "bid for the consultant position" had been

accepted.  *Id.*

On July 28, 2011, Ms. Tyre generated a Purchase Order "to formalize the

contract between the Department of Health and Vitaver."  Doc. 69-5 at 4 (Tyre affidavit);

*see also* Tab C to Tyre affidavit (doc. 69-5 at 118-142).  "The SOW was attached and incorporated into" the Purchase Order.  *Id.* at 5; *see* also Tab C (doc. 69-5 at 118-142).  "Under the Purchase Order, Vitaver would be directly paid $85.00 per hour for its consultant's work."  *Id.*  It was expected that 1,854 hours would be needed to complete the project.  *Id.*  Mr. Brown was to perform the work, but "ultimately it was Vitaver's responsibility to produce" the deliverables.  *Id.* at 6 (Tyre affidavit).  Ms. Tyre reviewed "all deliverables for quality and to approve payment for services to the vendor."  *Id.*  Payment could be "withheld to a vendor if the deliverables [were] not provided or [were] of poor quality."  *Id.*

Mr. Brown "executed a separate Independent Contractor Agreement with Vitaver under which he agreed to provide project management services to MQA pursuant to Vitaver's agreement with" the Department and the SOW.  Doc. 69-5 at 5 (Tyre affidavit).  In signing the Agreement, Mr. Brown understood that he agreed to work as an independent contractor and that the Agreement with Vitaver did not create an employee-employer relationship between him and the Department.  Doc. 69-2 at 4, 10 (Plaintiff's deposition 19:7-16, 29:14-18).  Mr. Brown "agreed to work as an independent contractor at a rate of $66.50," and would be paid by Vitaver for that work.[11]  Doc. 69-2 at 5 (Plaintiff's deposition 20:2-9); *see also* Ex. 2 to Plaintiff's deposition (doc. 69-2 at 54-47).[12]  Mr. Brown knew that the contract provided for a definite term, a maximum

---

[11] The difference between Mr. Brown's rate of $66.50 and the contractual rate of $85.00 was money paid by the Department to Vitaver.  Doc. 69-2 at 8 (Plaintiff's deposition 24:10-21).

[12] The Independent Contractor Agreement was attached to the deposition transcript.  *See* Ex. 2 to Plaintiff's deposition (doc. 69-2 at 54-47).  The title of the document is "Independent Contractor Agreement" and states that the independent

number of hours, although he believed his services could be extended.  Doc. 69-2 at 8,

16 (Plaintiff's deposition 24:6-15; 37:13-16).  Mr. Brown understood that he would not be

eligible to receive benefits from Defendant, such as state retirement benefits or health

care coverage.  Doc. 69-2 at 10-11, 34 (Plaintiff's deposition 29:19-30:2; 59:6-21).

The Independent Contractor Agreement signed by Mr. Brown on July 10, 2011,

identifies him as "an independent contractor" and the Department of Health is a "firm"

with whom Vitaver "has developed substantial valuable good will."  Doc. 80-1 at 14.  A

provision within the Agreement states that the independent contractor "is independent

from VITVER's and/or FIRM's control or supervision in the performance of its work

under the SOW or projects covered by this Agreement."  *Id.* at 15.  The next sentence

provides: "Nothing in this Agreement shall be construed as creating an employer-

employee relationship, a partnership, agency, joint venture, or as a guarantee of future

employment or engagement."  *Id.*

Mr. Brown performed his work at the Department of Health, although he also

worked remotely from home.  Doc. 69-2 at 19, doc. 69-3 at 12 (Plaintiff's deposition

42:18-24; 129:20-130:1); doc. 69-7 at 3 (Love affidavit).  The Department's preference

is to have consultants located on campus because they "need to learn our business

processes and also need free access to our systems to perform their duties."  Doc. 69-5

at 5 (Tyre affidavit).  The Department requires "that work related to these projects occur

---

contractor "shall be compensated as an independent contractor at the negotiated flat
rate of $66.50 per hour all-inclusive . . . ."  Doc. 80-2 at 14.  Additionally, the Agreement
states that the independent contractor "agrees that the fee received by it from VITAVER
does not constitute wages, salary, or employment compensation under state or federal
law, but rather is compensation for services performed as an independent contractor
separately engaged in its on-going business."  *Id.*

largely on [the Department's] own computers and systems for reasons of control and security."  *Id.*  Mr. Brown used the Department's computer equipment and software systems to perform his project manager duties.  Doc. 69-2 at 19-20 (Plaintiff's deposition 42:25-43:10).  Mr. Brown acknowledges that the Department's resources were at his disposal.  Doc. 80-2 at 5.

Mr. Brown did not supervise any employees of the Department of Health as project manager, nor was he supervised by any Defendant of Health employee.  Doc. 69-2 at 27-28 (Plaintiff's deposition 51:18-52:1).  Within his own statement of facts, he admits he "was not evaluated by any employee of" the Department.  Doc. 80-1 at 3.

Although Mr. Brown submitted timesheets to Ms. Tyre for review and approval, Mr. Brown used "Vitaver timesheets" to document his hours.  Doc. 69-5 at 6 (Tyre affidavit); *see also* Tab D to Tyre affidavit (doc. 69-5 at 145-149, 151-155, 157-161, 163-167, 169-173); *see also* doc. 69-2 at 4, 10, and 30 (Plaintiff's deposition 20:10-23; 52:17-53:18; 55:14-19).  Mr. Brown said that he would discuss taking time off with Ms. Tyre and Ms. Love, but was unsure whether he needed their permission.  Doc. 69-2 at 37-38 (Plaintiff's deposition 62:22-63:10).  Ms. Love stated in her deposition that Mr. Brown often informed her in advance prior to working remotely or taking time off, but she "had no authority to deny or prevent him from taking time off and viewed [her] advance notice as a professional courtesy."  Doc. 69-7 at 3-4 (Love affidavit). Mr. Brown stated in his own deposition that he did not recall having to fill out a leave form to request time off.  Doc. 69-2 at 38 (Plaintiff's deposition 63:14-18).  When he took time off from work, it was not compensated but "unpaid leave."  Doc. 69-2 at 38-39 (Plaintiff's deposition 63:19-64:3).

Ms. Tyre also "reviewed and approved invoices received from Vitaver for [Mr. Brown's] work."  Doc. 69-5 at 6-7 (Tyre affidavit).[13]  Those invoices "were directly paid" by the Department of Health to Vitaver "pursuant to the Purchase Order agreement."  *Id.* at 7; *see also* Tab D to Tyre affidavit (doc. 69-5 at 143-144, 150, 156, 162, and 168).  Mr. Brown did not receive a paycheck from the State of Florida, nor did he receive a W2 from the State for the work he performed for the Department.  Doc. 69-2 at 28 (Plaintiff's deposition 52:2-16).  Mr. Brown was paid by Vitaver for the services he performed for the Department on a bi-weekly basis.  Doc. 69-2 at 4, 8, 28, 32 (Plaintiff's deposition 21:1-15; 24:13-21; 52:2-25; 57:6-10).  Mr. Brown received a 1099 tax form from Vitaver for his services as a project manager, not from the Department.  Doc. 69-2 at 33 (Plaintiff's deposition 58:24-59:1).

Issues eventually arose at the Department and Mr. Brown's actions were deemed "disruptive and counterproductive."  Doc. 69-5 at 11 (Tyre affidavit).  Ms. Pouncey and Ms. Tyre believed that Mr. Brown "should not continue as the project manager."  *Id.*  Ms. Tyre contacted Vitaver to discuss Mr. Brown's performance and advised that Mr. Brown "had not performed" to the expected level.  *Id.* at 11-12.  It was expressed to Florencia Vitaver in a March 29, 2012, meeting that Mr. Brown "was in opposition to the direction MQA wanted to take ECMS, and he had demonstrated poor behavior."  *Id.* at 12.  "Ms. Vitaver agreed that [Mr. Brown] should be removed as project manager."  *Id.*  Ms. Tyre accompanied Ms. Vitaver who personally informed Mr. Brown "that his services would no longer be required."  *Id.*; *see also* doc. 69-2 at 39 (Plaintiff's

---

[13] In a few instances, Ms. Pouncey reviewed Mr. Brown's timesheets in the absence of Ms. Tyre.  Doc. 69-5 at 6 (Tyre affidavit); doc. 69-2 at 28 (Plaintiff's deposition 52:19-25).

deposition 64:4-21).  Plaintiff never received a termination letter from the Department's personnel department.  Doc. 69-2 at 36 (Plaintiff's deposition 61:5-12).

**Analysis**

Title VII makes it unlawful "for an employer . . .  to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."  42 U.S.C. §§ 2000e–2(a)(1).  Only "plaintiffs who are 'employees' may bring a Title VII suit."  Llampallas v. Mini–Circuits, Lab, Inc., 163 F .3d 1236, 1242-43 (11th Cir. 1998) (quoted in Maeder v. Tom Bush Auto Plex, Inc., No. 3:14-CV335-J-34PDB, 2015 WL 1277925, at *2 (M.D. Fla. Mar. 20, 2015)).   Thus, the legal determination of Mr. Brown's "employment status is central to this case."  Taylor v. BP Exp., Inc., No. CV-407-182, 2008 WL 5046071, at *2 (S.D. Ga. Nov. 24, 2008).

Title VII has defined "employee" only as "an individual employed by an employer. . . ."  Cobb v. Sun Papers, Inc., 673 F.2d 337, 339 (11th Cir. 1982), *cert. denied*, 459 U.S. 874, 103 S.Ct. 163, 74 L.Ed.2d 135 (1982) (quoting 42 U.S.C. § 2000e(f)).[14] Because the legislative history did not reveal "how expansively that definition [was] meant to be read," the Eleventh Circuit has concluded that "[e]mployment must be

---

[14] The statute provides in relevant part: "The term 'employee' means an individual employed by an employer, except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office."  42 U.S.C. § 2000e.  The Supreme Court has noted that such a definition "surely qualifies as a mere 'nominal definition' that is 'completely circular and explains nothing.' "  Clackamas Gastroenterology Assoc., P. C. v. Wells, 538 U.S. 440, 444, 123 S. Ct. 1673, 1677, 155 L. Ed. 2d 615 (2003) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992)).

distinguished from the independent contractual associations of business entities for the latter are not covered by Title VII." *Id.* at 339-40 (noting that "[a]bsent guidance from the Supreme Court, . . . the term 'employee' in cases under Title VII is to be construed in light of general common law concepts.") (quoting Mathis v. Standard Brands Chem. Indus., Inc., 10 F.E.P. 295, 297 (N.D. Ga. 1975))).

In considering an ERISA claim[15] in which the statute uses the same definition of employee as is used in Title VII, the Supreme Court explained that " 'when Congress has used the term 'employee' without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine.' " Darden, 503 U.S. at 322-23, 112 S.Ct. at 1348 (quoted in Clackamas Gastroenterology Assoc, 538 U.S. at 445, 123 S. Ct. at 1678).  The conventional master-servant relationship was also the basis for resolving whether a sculptor was an "employee," an undefined term, for purposes of the Copyright Act. Community for Creative Non–Violence v. Reid, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) (relied on in Darden, 503 U.S. at 322, 112 S. Ct. at 1348).  The Supreme Court set forth a "common-law test" for determining who qualifies as an 'employee' under ERISA," utilizing the same test employed in Reid:

> [W]e consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and

---

[15] Under the Employee Retirement Income Security Act of 1974 (ERISA), a benefit plan 'participant' may sue to enforce the substantive provisions of the Act. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 320, 112 S. Ct. 1344, 1347, 117 L. Ed. 2d 581 (1992).  The Court concluded that "Darden's ERISA claim [could] succeed only if he was Nationwide's 'employee,' a term the Act defines as 'any individual employed by an employer.' " Darden, 503 U.S. at 321, 112 S. Ct. at 1347 (quoting 29 U.S.C. § 1002(6)).

> tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Reid, 490 U.S. at 751-52, 109 S.Ct. at 2178-79 (quoted in Darden, 503 U.S. at 323-24, 112 S. Ct. at 1348).

In the more recent case of Clackamas Gastroenterology Assoc, the Court "whether four physicians actively engaged in medical practice as shareholders and directors of a professional corporation should be counted as 'employees.' " 538 U.S. 440, 442, 123 S. Ct. 1673, 1675, 155 L. Ed. 2d 615 (2003).[16] The Court again turned to "the common law's definition of the master-servant relationship" for "helpful guidance," noting the focus is "on the master's control over the servant." *Id.* at 448, 123 S. Ct. at 1679 (stating that "the common-law element of control is the principal guidepost that should be followed"). While control is important, the determination should ultimately consider "all of the incidents of the relationship ... with no one factor being decisive." *Id.* at 451, 123 S. Ct. at 1681 (citations omitted).

There are three different tests which have been adopted for distinguishing between employee and independent contractor.[17]  Garcia v. Copenhaver, Bell & Assoc.,

---

[16] Again, "[t]he definition of the term in the ADA simply states that an 'employee' is 'an individual employed by an employer.' " Clackamas Gastroenterology Assoc., 538 U.S. at 444, 123 S. Ct. at 1677 (quoting 42 U.S.C. § 12111(4)).

[17] The Court explained the three different tests used to distinguish between an "employee" and an independent contractor: (1) the common-law agency test (set forth in Reid); (2) the "economic realities" test; and (3) "a combination of the agency and economic realities tests ('hybrid test')." Garcia v. Copenhaver, Bell & Assoc., M.D.'s, P.A., 104 F.3d 1256, 1266 (11th Cir. 1997) (citing Cobb, 673 F.2d at 340-41).

M.D.'s, P.A., 104 F.3d 1256, 1266-67 (11th Cir. 1997) (deciding in ADEA case that the

Court need not decide which test to employ because of disputed facts).  The Eleventh

Circuit utilizes a "hybrid" test to resolve that issue.  Garcia, 104 F.3d at 1266-67; *see*

*also* Cobb, 673 F.2d at 340-41 (stating this Circuit "has adopted the 'economic realities'

test to determine whether a Title VII plaintiff is an employee.") (relied on in Cuddeback

v. Florida Bd. of Educ., 381 F.3d 1230, 1234 (11th Cir. 2004)).  Under that test, "the

term 'employee' is 'construed in light of general common law concepts' and 'should take

into account the economic realities of the situation,' 'viewed in light of the common law

principles of agency and the right of the employer to control the employee.' "

Cuddeback, 381 F.3d at 1234.  In essence, courts should consider the "totality of the

evidence," looking "beyond the simple right to control issues and weigh[ing] all the

factors involved in the situation in" determining whether a Title VII plaintiff is an

employee or independent contractor.  Cobb, 673 F.2d at 342.  That hybrid test is in line

with the guidance given from the Supreme Court Clackamas.

The eleven factors to be considered in determining if Mr. Brown is an employee

or independent contractor are these:

> (1) the kind of occupation, with reference to whether the work usually is
> done under the direction of a supervisor or is done by a specialist without
> supervision; (2) the skill required in the particular occupation; (3) whether
> the "employer" or the individual in question furnishes the equipment used
> and the place of work; (4) the length of time during which the individual
> has worked; (5) the method of payment, whether by time or by the job; (6)
> the manner in which the work relationship is terminated; i.e., by one or
> both parties, with or without notice and explanation; (7) whether annual
> leave is afforded; (8) whether the work is an integral part of the business
> of the 'employer'; (9) whether the worker accumulates retirement benefits;
> (10) whether the 'employer' pays social security taxes; and (11) the
> intention of the parties.

Cobb, 673 F.2d 337 (utilized in Holland v. Gee, 719 F. Supp. 2d 1361, 1365 (M.D. Fla. 2010); *see also* Taylor, 2008 WL 5046071, at *3 (applying the hybrid test and concluding plaintiff was an independent contractor).  "No one factor is controlling, nor is the list exhaustive . . . .   The weight of each factor depends on the light it sheds on the putative employee's dependence on the alleged employer, which in turn depends on the facts in the case."  Santelices v. Cable Wiring, 147 F.Supp.2d 1313, 1319 (S.D. Fla. 2001) (quoted in Holland, 719 F. Supp. 2d at 1365).

As for the first factor, the undisputed evidence reveals Mr. Brown was hired as a project manager to develop ECMS because someone with specialized education and experience was needed.  Development of ECMS would require "information technology knowledge and project management skills that" Department employees either lacked, or could not utilize because of their other job duties.  Accordingly, the first two factors weigh in the Department's favor as the position was for a specialist with expertise in the field of information technology.  Such a position is not usually performed under the direction of a supervisor but is a specialized, independent skill.

As for the third factor, whether the "employer" furnishes the equipment used and the place of work, it is undisputed that this position required the person hired to use the Department's computer equipment and to generally be present at the Department's offices to perform the tasks desired.  While some work could be performed off-site or remotely, it was imperative that the project manager be at the Department's facilities. This factor generally would support finding Mr. Brown was an employee by requiring his presence at the place of employment.

Mr. Brown was contracted for a short period of time, less than one year.  Such a limited term supports finding that Mr. Brown was an independent contractor. Additionally, the fifth factor concerning the method of payment reveals Mr. Brown was not an employee of the Department of Health because he was paid by Vitaver.  The Department submitted payment to Vitaver, who retained a portion of that payment, and then paid Mr. Brown $66.50 per hour.  Mr. Brown did not receive any of the typical benefits an employee of a company would receive such as health insurance.

The sixth factor also weighs in the Department's favor as the work relationship was terminated not just by a decision made by the Department of Health, but jointly. The evidence reveals that a representative from Vitaver met with Ms. Tyre in carrying out the termination of Mr. Brown's services.  Additionally, had the contract been carried out to its natural completion, it would have ended upon completion of the project.  Thus, explanation would have been unnecessary.

The seventh factor concerning annual leave is also in the Department's favor.  If Mr. Brown took time off from his work, he was not compensated.  Traditional employees generally earn time off and make take leave with pay.  Furthermore, there was no specified requirement or procedure for Mr. Brown to request time off.  No employee in the Department of Corrections was charged with the responsibility of approving a leave request.

As for the eighth factor, it may be said of many businesses that the use of information technology is an "integral part of the business of the 'employer.' "  However, it would be more accurate to describe information technology as an important part of the manner in which the Department does business, but it is not the Department's true

business.  The Department of Health is not in the business of designing or creating new computer systems.

The ninth factor is also in the Department's favor as Mr. Brown did not earn or accumulate any retirement benefits from the State of Florida.  Furthermore, the Department did not pay social security taxes for Mr. Brown or provide him with either a W-2 form or 1099 form for his services as a project manager.  The undisputed evidence for factor ten, thus, is also in the Department's favor.

Finally, the last factor considers the intention of the parties.  The Agreement which Mr. Brown signed makes it clear that the intention was to hire him as an independent contractor and not as an employee of the Department of Health. Furthermore, the State Contract also specifies that the vendor contracted by the Department must "ensure" that no employment relationship exists between the Contractor and the Department of Health.  Mr. Brown's own deposition reveals he was aware that he had "agreed to work as an independent contractor" pursuant to a contract between the Department of Health and Vitaver.  Considering the totality of these common law agency principles, the weight of the scales tips heavily in the Department's favor.

Moreover, when considering the degree of control exercised by the Department over Mr. Brown, there is no evidence that any Departmental employee supervised him. There is no evidence that Mr. Brown supervised any Department employee.  Rather, he worked independently, utilizing his professional judgment to create the ECMS project. No person had oversight over the manner in which Mr. Brown worked, although the Department retained ultimately approval of the work product.  The evidence sufficiently

demonstrates that more Mr. Brown was an independent contractor, employed by Vitaver to produce a product for the Florida Department of Health.  Because Mr. Brown was not an employee of the Department, there is no basis for his Title VII claims.  The motion for summary judgment filed by the Department should be granted, and Mr. Brown's motion for summary judgment should be denied.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that: (1) the Department of Health's motion to dismiss the tort claims, doc. 58, be **GRANTED**; (2) Mr. Brown's motion for judgment on the pleadings, doc. 105, be **DENIED**; (3) that Mr. Brown's second amended motion for summary judgment, doc. 92, be **DENIED**; and (4) that the Department of Health's motion for summary judgment, doc. 69, be **GRANTED** and judgment entered in the Department's favor.

**IN CHAMBERS** at Tallahassee, Florida, on September 1, 2015..


 S/     Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**